UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

JOHN LEEKIN, on behalf of himself
and all others similarly situated,

    Plaintiff,

vs.

PRESS & PROFIT, LLC, d/b/a VIENNA
COFFEE, PETER GUGITSCHER, individually,
and ANDREAS GUGITSCHER, individually,

    Defendants.
_____/

**COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, JOHN LEEKIN ("Leekin"), by and through the undersigned counsel, on behalf of himself and all others similarly situated, hereby sues Defendant, PRESS & PROFIT, LLC, d/b/a VIENNA COFFEE ("Vienna"), PETER GUGITSCHER, individually ("Peter"), and ANDREAS GUGITSCHER, individually ("Andreas"), and alleges:

1. Leekin brings this action on behalf of himself and all other similarly situated current and former delivery drivers of Defendants to recover from the Defendants unpaid overtime compensation, liquidated damages, costs and reasonable attorneys' fees, as well as for declaratory and injunctive relief, under the provisions of the Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq*. (the "FLSA"), and specifically under 29 U.S.C. § 216(b).

2. This Court is vested with federal question jurisdiction over Plaintiff's claim arising under the FLSA, pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3. Venue lies within the Southern District of Florida, per 28 U.S.C. § 1391(b), because all actions giving rise to this claim arose in this Judicial Circuit.

4. All statutory and administrative prerequisites have been met, waived, or abandoned prior to the filing of this action.

### THE PARTIES

5. At all times material hereto, Press & Profit, LLC, was a privately held company in Boca Raton, Florida.

6. At all times material hereto, Vienna was duly authorized and licensed to do business in Palm Beach County, Florida, with its principal address at 1300 SW 10th Street, Suite 3, Delray Beach, Florida, 33444.

7. At all times material hereto, Vienna was an "employer" under the FLSA. Specifically, Vienna was Leekin's employer as it relates to these claims.

8. At all times material hereto, Peter was a resident of Palm Beach County, Florida, and is Vienna's Chief Executive Officer.

9. At all times material hereto, Peter was the CEO of Vienna and controlled Leekin's duties, hours worked, and compensation, and managed the day-to-day operations of Vienna. Accordingly, Peter Gugitscher was and is an "employer" of the Plaintiff within the meaning of 29 U.S.C. §203(d).

10. At all times material hereto, Andreas was a resident of Palm Beach County, Florida, and is Vienna's Chief Operating Officer.

11. At all times material hereto, Andreas was the COO of Vienna and controlled Leekin's duties, hours worked, and compensation, and managed the day-to-day operations of Vienna. Accordingly, Andreas Gugitscher was and is an "employer" of the Plaintiff within the meaning of 29 U.S.C. §203(d).

12.

## *COVERAGE*

13.	Vienna provides, and continues to provide, commercial coffee machines, flavored coffees, and other products to customers, offices, and restaurants throughout South Florida. Additionally, Vienna services the machines.

14.	Vienna engaged in interstate commerce on a regular and recurring basis within the meaning of the FLSA, including but not limited to purchase and receipt of shipments of coffee and coffee machines manufactured outside of the State of Florida.

15.	Upon information and belief, Vienna had an annual gross sales made or business done of $500,000 or more.

16.	Further, at all times material hereto, during their employment with Defendants, Leekin, and all others similarly situated to him, were individually engaged in interstate commerce. For example, Leekin directly participated in the actual movement of things in interstate commerce by delivering goods previously moved in interstate commerce that had not yet reached the ultimate consumer, such as coffee beans and coffee machines.

17.	Upon information and belief, both Peter and Andreas Gugitscher acted directly and indirectly in the interest of the corporate Defendant, in relation to Leekin, and similarly situated service technicians/delivery drivers, regarding pay classification, pay methodology, pay rates, hours, and the terms and conditions of employment. They set policies and procedures for the corporate Defendant, such as work hours, delivery hours, delivery locations, and terms and conditions of its clients' relationships with Vienna (e.g., machine repair requests and re-orders of coffee and coffee accoutrements).

## *STATEMENT OF THE ULTIMATE FACTS*

18. Leekin began his employment with Vienna on or about October 3, 2021 and held the position of service technician until he was terminated.

19. Leekin's job duties included servicing commercial coffee machines, as well as delivering recurring orders of coffee and coffee accoutrements, such as milk, chocolate, cups, coffee stirrers, sugar, and more.

20. Leekin regularly worked six or seven days per week. He would often begin his shifts at approximately 8:00 a.m. and would work until he had no other outstanding assignments, sometimes as late as 9:00 p.m.

21. Leekin regularly worked overtime for Vienna, averaging around 40 hours per week of overtime alone, in addition to his first 40 regular hours. In some weeks, he worked more than 50 hours per week of additional overtime.

22. Vienna classified Leekin as an independent contractor.

23. Vienna required Leekin to execute an "Independent Contractor Agreement", in order to disguise his true status as an employee. Vienna is in possession of the Agreement.

24. In his role as a technician, Leekin was an integral part of Vienna's business operations; without technicians like Leekin, Vienna could not provide its services to its customers. Vienna advertises both machine maintenance and coffee bean delivery as part of its services. Indeed, the Defendants' entire business model is economically dependent on the service technicians/coffee delivery drivers, and the service technicians/coffee delivery drivers likewise are economically dependent on the Defendants for their livelihood.

25. By classifying Leekin as an independent contractor, Vienna can avoid the additional expenses associated with W-2 employees, including but not limited to providing

overtime to its technicians, workers' compensation coverage in the event of on-the-job injuries, and unemployment coverage in the event of termination.

26. Vienna controlled Leekin's hours. Vienna regularly required Leekin to work longer hours than his set schedule, and regularly required Leekin to work hours at its direction and demand.

27. Vienna controlled Leekin's work assignments. In particular, Vienna required Leekin to work at any site that was assigned to him, whether that was to deliver coffee or to service the machines in place.

28. Vienna did not permit Leekin to outsource or otherwise subcontract his assignments to anyone else of his choosing. He was required to perform them personally. If he was unavailable for any reason, upon information and belief, Vienna provided the assignment to one of its other willfully misclassified "independent contractors".

29. Vienna set Leekin's rate of pay. He was paid $15.00/hr. for all hours worked. Leekin did not have the ability to negotiate a higher rate of pay. Further, even though he did not receive any raises, any changes in pay would be at the discretion of Vienna.

30. Even though Leekin worked overtime regularly, he did not receive any additional premium for his overtime work.

31. For calendar year 2021, Leekin received a Form 1099-NEC, rather than the Form W-2 he should have received. Leekin is also expected to receive a Form 1099-NEC for the work he did in calendar year 2022 for Vienna prior to his termination.

32. Vienna provided Leekin with all the tools he needed to complete his service assignments. If he purchased any tools himself, Vienna reimbursed him for his expenses. Upon

information and belief, after Vienna terminated or otherwise separated service technicians, it kept all tools, even those initially purchased by the employee.

33. At all times material hereto, Vienna's classification of Leekin (and all other service technicians) as "independent contractor," as opposed to W-2 employee, was incorrect and Leekin was an employee for purposes of the FLSA.

34. On or about November 7, 2022, Vienna terminated Leekin.

### *COLLECTIVE ACTION ALLEGATIONS*

35. The additional persons who may become plaintiffs in this action, and who Leekin believes are entitled to notification of the pendency of this action, and of their right to opt-in to this action, are current and former service technicians/delivery drivers of Defendants, who are or were subject to the payroll practices and procedures described in the paragraphs above, all of whom are or were previously employed by Defendants.

36. During the three (3) years preceding the filing of this lawsuit, Defendants have (1) employed and continue to employ individuals similarly situated to Leekin (i.e. individuals performing the duties of both service technicians and coffee delivery drivers); (2) classified and continue to classify these individuals as independent contractors; and (3) suffered or permitted to be suffered, with knowledge, hours of service by these individuals, including in excess of forty (40) during one or more workweeks, for which Defendants failed to pay proper minimum wages and/or overtime premiums for those hours worked in excess of forty (40).  Each improperly classified (and therefore improperly paid) service technician/delivery driver who performed and/or continues to perform services for Defendants, for any time period during the three (3) years preceding this lawsuit, is entitled to notification of the pendency of this action and of his/her right to consent to becoming a party to this action.

37. Defendants already have been sued once in the past three years based on these same payroll practices, which lawsuit was settled in or about March 2020. See *Carillo v. Press & Profit, LLC*, Case No. 9:20-cv-80106-JIC (S.D. Fla. 2020). However, Defendants continue to operate in the same fashion as described herein with regard employees like Leekin, such that their actions are willful.

### COUNT I – VIOLATION OF THE FLSA

38. Paragraphs 1 through 36 are re-alleged and incorporated herein by reference.

39. Plaintiff is entitled to be paid time and one-half for each hour worked in excess of forty (40) per workweek and to have such overtime calculated in accordance with Federal Regulations. All similarly situated employees are similarly owed time and one-half, calculated properly, for those overtime hours they worked and for which they were not properly paid.

40. By reason of the willful acts of the Defendants, all Plaintiffs (Leekin and those similarly situated to him) have suffered damages plus incurred costs and reasonable attorneys' fees.

41. As a result of the Defendants' violation of the Act, all Plaintiffs (Leekin and those similarly situated to him) are entitled to liquidated damages in an amount equal to that which they are owed as unpaid overtime.

42. Leekin has retained the undersigned counsel and law firm to represent his interests in this cause. Leekin is entitled prevailing plaintiff attorney's fees under the FLSA.

WHEREFORE, Plaintiff, JOHN LEEKIN, and those similarly situated to him, who have or will opt-in to this action, demand judgment against Defendants for the overtime compensation payments due them for the hours worked by them for which they have not been properly

compensated, liquidated damages, reasonable attorneys' fees and costs of suit, and for all other relief the Court deems just and proper.

**LEEKIN DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Dated: December 8, 2022
Boca Raton, FL

Respectfully submitted,

**Alex B.C. Ershock**
DANIEL R. LEVINE, ESQ.
Florida Bar No. 0057861
E-Mail:  DRL@PBL-Law.com
ALEX B.C. ERSHOCK, ESQ.
Florida Bar No. 100220
E-Mail:  ABE@PBL-Law.com
PADULA BENNARDO LEVINE, LLP
3837 NW Boca Raton Blvd., Suite 200
Boca Raton, FL   33431
Telephone:    (561) 544-8900
Attorneys for Plaintiff